An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-875

Filed 17 June 2026

Durham County, No. 22SP000445-310

IN THE MATTER OF THE FORECLOSURE OF A DEED OF TRUST EXECUTED BY MARTIN E. ROCK DATED JULY 2, 2007 AND RECORDED IN BOOK 5693 AT PAGE 38 IN THE DURHAM COUNTY PUBLIC REGISTRY, NORTH CAROLINA

Appeal by respondent from orders entered 7 September 2023 by Judge John M. Dunlow in Superior Court, Durham County. Heard in the Court of Appeals 13 August 2025.

*Brock & Scott, PLLC, by Alan M. Presel, for petitioner-appellee.*

*Mark Hayes for respondent-appellant.*

STROUD, Judge.

Respondent Martin E. Rock appeals a superior court order authorizing Goddard and Peterson, PLLC, as substitute trustee, to proceed with a foreclosure sale of his real property under a deed of trust. He also appeals a second order, entered the same day as the first, refusing to let him withdraw his earlier appeal to superior court. After he gave notice of appeal, the sale went forward, and the property was conveyed to the highest bidder. This appeal is therefore moot and we dismiss it.

## I. Background

This case arises from the foreclosure of Respondent's property on Shamrock Road in Durham, North Carolina. In 2007, Respondent executed a home equity line of credit agreement and disclosure, which was secured by a promissory note and deed of trust on the property. On 10 June 2022, Petitioner Citibank filed a "Notice of Hearing on Foreclosure of Deed of Trust" with the Durham County Clerk of Superior Court, alleging that Respondent was in default. A clerk held the foreclosure hearing on 22 February 2023. She stated that she was "inclined to issue [the] order of foreclosure" but that there were "a few things" she "want[ed] to take under advisement."

At the end of the hearing, the Substitute Trustee's counsel handed up a "copy of an order and [n]otice of [s]ale" for the clerk's review. Counsel did not have a copy for Respondent. The clerk, however, told Respondent that he would "have an opportunity to look at it," and that he could appeal within ten days after she entered an order. Respondent asked to "provide comments to someone in the [c]lerk's office to pass on to" the clerk. She gave him forty-eight hours to "provide comments to somebody in [s]pecial [p]roceedings"—until the end of the day on Friday, 24 February 2023.

On 28 February 2023, the clerk entered an "Order Permitting Foreclosure" (First Order). She made findings of fact on each of the six matters that North Carolina General Statute Section 45-21.16(d) requires. *See* N.C. Gen. Stat. § 45-21.16(d) (2025); *see also In re Foreclosure of Real Prop. under Deed of Tr. from Young,*

227 N.C. App. 502, 505, 744 S.E.2d 476, 479 (2013) (explaining that the clerk "is limited to making the six findings of fact specified under subsection (d) of [Section 45-21.16]": (1) a valid debt held by the foreclosing party; (2) default; (3) the trustee's right to foreclose under the instrument; (4) notice to those entitled to it under subsection (b); (5) that the debt is not a home loan—or, if it is, that pre-foreclosure notice was given and the Article 11 periods have elapsed; and (6) that the sale is not barred by North Carolina General Statute Section 45-21.12A).

On 7 March 2023, the same clerk entered a separate order (Second Order). The Second Order stated that it was issued "[u]pon consideration of the evidence presented[ ] and the arguments of counsel" at the same 22 February 2023 hearing the First Order dealt with. It neither mentions the First Order nor purports to amend or correct any earlier order. And it makes none of the six findings that Section 45-21.16(d) requires. *See* N.C. Gen. Stat. § 45-21.16(d). Instead, it includes extensive findings on the matters Respondent argued at the hearing: a dismissed 2019 foreclosure apparently involving the same property; an unpublished decision of this Court, *In re Foreclosure of a Lien by Exec. Off. Park of Durham Ass'n, Inc. v. Rock,* 287 N.C. App. 694, 883 S.E.2d 227 (2023) (unpublished), which concerned a different property Respondent owns;[1] and an assortment of other unrelated matters, all taken

---

[1] That case involved a foreclosure for unpaid condominium assessments under the Unit Ownership Act—a different property and a different statutory scheme. *See* N.C. Gen. Stat. § 47A (2025) ("Unit Ownership Act").

by "judicial notice." It also quotes several cases and statutes, most of them beside the point. The Second Order is unusual, and it ends by stating that Petitioner's "petition for an order of sale is DENIED."[2] It was never served on Petitioner.

On 10 March 2023, Respondent filed a notice of appeal from the First Order. Three days later, the clerk entered an order to transfer the foreclosure matter to Durham County Superior Court.

On 6 April 2023, Respondent filed a motion to dismiss Petitioner's petition for foreclosure sale under Section 45-21.16(d1). The Second Order, he alleged, had denied the foreclosure, and because no one appealed it, the matter was over. He also alleged that the clerk held a hearing on 22 February 2023 and that:

> 2. . . . The [c]lerk indicated she was inclined to grant the order of sale, but she wished to take certain issues raised and argued by [Respondent] under advisement. The [c]lerk also stated [Respondent] was allowed to provide comments on the [Petitioner's] *pro forma* order.
>
> 3. The [c]lerk entered a *pro forma* order on 28 February 2023[, *i.e.*, the First Order].
>
> 4. Respondent appealed this order on 10 March 2023 by filing a [n]otice of [a]ppeal to [s]uperior [c]ourt and by paying an appeal bond in an amount deemed appropriate by the [c]lerk. Hence, the [First] [O]rder entered . . . is stayed pending appeal.
>
> 5. On 28 February 2023, [Respondent] filed a Notice of Alternate Proposed Order and provided an alternate

---

[2] The Second Order presents a conundrum: Our record does not reveal why the clerk entered it after the First Order had already been filed. The transcript of the hearing before the clerk does not explain it. Neither do the superior court's transcripts and orders. The parties' counsel engaged in some speculation, but (again) the record supplies no answer.

proposed order for the [c]lerk's consideration.

6. After taking the matters raised by [Respondent] under advisement, the [c]lerk entered an order DENYING . . . [Petitioner's] petition for an order of sale on 07 March 2023[, *i.e.*, the Second Order].

On 24 April 2023, Respondent moved for equitable relief under North Carolina General Statute Section 45-21.34. *See* N.C. Gen. Stat. § 45-21.34 (2025) ("Any owner of real estate . . . having a legal or equitable interest therein, may apply to a judge of the superior court, prior to the time that the rights of the parties to the sale or resale becoming fixed . . . to enjoin such sale . . . ."). The motion sought to enjoin the foreclosure sale on equitable grounds, pressing the same objections the Second Order had catalogued.

The superior court denied each of Respondent's motions in a 22 May 2023 order. It found, in part:

> 7. There is no evidence in the record that the [c]lerk['s] . . . purported [Second] Order . . . was ever served upon either [Petitioner] or Substitute Trustee.
>
> 8. Without ruling upon the validity of the [c]lerk['s] . . . [Second] Order . . . , the [c]ourt finds that any order entered by the [c]lerk . . . in this proceeding has been properly appealed to [s]uperior [c]ourt pursuant to [Section] 45-21.16(d1), and no further action is required by any party to effectuate the transfer of this proceeding to [s]uperior [c]ourt.
>
> 9. The *de novo* hearing regarding the appeal of the [c]lerk['s] . . . [First and Second] Order(s) has been calendared by the [c]ourt and shall be conducted on [5 June 2023]. At such hearing, any party may assert any legal

grounds in favor of or in opposition to a foreclosure sale in this proceeding. In accordance with North Carolina law, this [c]ourt has no jurisdiction to consider any equitable claims or defenses which may be raised by Respondent at said *de novo* hearing.

On 15 June 2023, Respondent filed a motion to "set aside or vacate" the First Order. Once again, he alleged that the clerk "said, on the record," he could submit "comments for the court's consideration on the pre-written, *pro forma*, one-page order"—that is, the First Order. Petitioner filed a response, noting that the superior court had already addressed these matters in its 22 May 2023 order.

On 25 July 2023, the superior court held a hearing on the foreclosure petition. Respondent, now represented by counsel, moved to continue, and the court continued the matter to 24 August 2023.

At that hearing, Petitioner presented its case in chief for foreclosure and rested; Respondent then presented his evidence. The court could not finish the hearing that day, so it scheduled the hearing's conclusion for 9:45 a.m. on 28 August 2023.

Fifteen minutes before the hearing was set to resume—at 9:30 a.m. on 28 August—Respondent filed a "Notice of Withdrawal/Dismissal of Appeal" (dismissal notice). It stated:

> Respondent . . . gives notice that he is withdrawing the appeal of the clerk's [First] [O]rder . . . from which he entered notice of appeal to the Durham County Superior Court on [10 March 2023] in an abundance of caution. The [clerk's] [First] [O]rder . . . was superseded by the clerk's

> . . . [Second] [O]rder . . . . Consistent therewith, and pursuant to North Carolina Rule of Civil Procedure 41(a), [Respondent] hereby withdraws and/or dismisses the appeal of the [clerk's] [First] [O]rder . . . .

The hearing concluded the next day.

On 7 September 2023, the superior court entered an order on the dismissal notice (dismissal order). It concluded, in part, that the 22 May 2023 order was the law of the case with respect to the First Order's validity—which (as a reminder) authorized foreclosure—and could not be "modified, overruled or changed by th[e] [c]ourt." It also determined that Rule 41 of the North Carolina Rules of Civil Procedure did not permit Respondent "to withdraw or dismiss his appeal to [s]uperior [c]ourt after . . . Petitioner had rested [its] case in the *de novo* hearing." *See* N.C. Gen. Stat. § 1A-1, Rule 41 (2025) ("Dismissal of actions"). The court ordered the hearing to "continue to conclusion."

That same day, the superior court entered another order allowing the foreclosure sale (foreclosure order). It made the findings of facts Section 45-21.16(d) requires and ordered that the Substitute Trustee could proceed with the sale. *See* N.C. Gen. Stat. § 45-21.16(d).

On 6 October 2023, Respondent appealed both orders.

## II.  Appellate Jurisdiction

In his opening brief, Respondent acknowledges that "a foreclosure sale has occurred regarding the property at issue" but argues that "this appeal is not moot"

under *In re Cornblum*, 220 N.C. App. 100, 727 S.E.2d 338 (2012). Petitioner counters that the appeal is moot, providing documentation of the foreclosure sale's completion. That documentation shows that the Substitute Trustee conveyed the property to the highest bidder by a trustee's deed dated 28 June 2024 and recorded it in the Durham County Register of Deeds on 19 July 2024, in Book 10140, Page 55. Ten days later, the Substitute Trustee recorded a foreclosure notice in Book 10145, Page 289. And on 12 August 2024, the clerk audited and recorded the "Final Report and Account of Foreclosure Sale," completing the foreclosure sale.

Respondent does not dispute any of this; instead, he resists mootness on two grounds. We address each in turn.

## A. Lack of Mootness Under *In re Cornblum*

Respondent asserts that this case "presents the exact same situation" as *Cornblum. See id.* He concedes the sale is complete and cannot be reversed, but he asks us to vacate the foreclosure order anyway. His theory is that no valid appeal ever reached the superior court, so its orders are void—a defect he says "ar[ose] from a lack of notice of appeal." And *Cornblum*, he claims, lets him raise that defect even now: there, this Court held the attack on the sale moot yet still "reverse[d] the order authorizing the foreclosure sale." So "[m]ootness is no bar," in his view, to deciding "whether the [s]uperior [c]ourt had subject matter jurisdiction to order foreclosure."

The appellants in *Cornblum* had executed notes and deeds of trust on several pieces of property. *Id.* at 101, 727 S.E.2d at 339. After they defaulted, the mortgagee

commenced foreclosure proceedings. *Id.* The appellants "demanded arbitration of all claims" under the arbitration agreements in the deeds of trust. *Id.* When the mortgagee refused, they filed motions to compel arbitration. *Id.* The clerk denied the motions and allowed the foreclosure sales to proceed. *Id.* On appeal, the superior court did the opposite: It entered an order compelling arbitration and later confirmed the award the arbitrator entered. *Id.* at 101–02, 727 S.E.2d at 339–40. Despite "demand[ing]" arbitration, the appellants argued on appeal that the superior court "did not have jurisdiction to confirm the arbitration award." *Id.* at 102, 727 S.E.2d at 340.

This Court held that "submitting th[e] case to arbitration and confirming the arbitration award fell outside of the superior court's subject matter jurisdiction." *Id.* at 105, 727 S.E.2d at 342. A court hearing a power-of-sale foreclosure under Section 45-21.16 cannot compel or confirm arbitration; its jurisdiction reaches only the six findings Section 45-21.16(d) requires, and arbitration is not one of them. *Id.* at 105, 727 S.E.2d at 341–42. Because the superior court had acted beyond its jurisdiction, we reversed its judgment confirming the award. *Id.*

The appellants gained nothing from that ruling, though, because the foreclosure sale had already closed. *Id.* at 107, 727 S.E.2d at 343. Drawing on *In re Hackley*, 212 N.C. App. 596, 713 S.E.2d 119 (2011), this Court explained that once a foreclosure sale is held and the trustee's deed recorded, the parties' rights become fixed under North Carolina General Statute Section 45-21.29A, and any challenge to

the sale is moot. *Id.* at 106–07, 727 S.E.2d at 342–43. The completed sale could not be "undone through th[e] appeal." *Id.* at 107, 727 S.E.2d at 343. So the appellants prevailed on the jurisdictional point and still lost the property—a result the Court itself called "somewhat incongruous." *Id.*

This case bears some resemblance to *Cornblum*, because Respondent is responsible for creating the subject matter jurisdiction issue he now raises on appeal. *See id.* (noting that the appellants' "conflicting litigation postures, the statutory framework, as well as binding precedent compel[led]" a "somewhat incongruous" outcome). He created it by filing a notice of appeal from the First Order and then attempting to withdraw it during the foreclosure hearing in superior court. And he added to the confusion by procuring the Second Order, which conflicts with the First Order allowing foreclosure.

But this case differs from *Cornblum* in other ways that matter. There, "submitting th[e] case to arbitration and confirming the arbitration award fell outside the superior court's subject matter jurisdiction." *See id.* at 105, 727 S.E.2d at 341. An order compelling arbitration does not address the findings required under Section 45-21.16(d) at all, and an order confirming an arbitration award touches on those issues only indirectly. The two orders here are different. The foreclosure order and the dismissal order both fell within the superior court's jurisdiction under Section 45-21.16(d). *See* N.C. Gen. Stat. § 45-21.16(d). The foreclosure order made the six findings that statute requires and authorized the sale. *Id.* The dismissal order ruled

on Respondent's attempt to withdraw his appeal in the middle of the foreclosure hearing. Because Respondent had filed the dismissal notice, it was within the superior court's authority under Section 45-21.16(d) to address the matter.

It is true that Section 45-21.16(d) does not list ruling on a party's attempted withdrawal of a notice of appeal among the issues a clerk must decide in a foreclosure action. *See id.* But in ruling on Respondent's attempted withdrawal, the superior court acted well within its authority. Respondent did not strip the court of jurisdiction under Section 45-21.16(d) by filing his dismissal notice after the hearing was already underway. His position is essentially this: once he filed that notice, the court had to stop the foreclosure hearing, because he said so. That rule would deny the court even the authority to rule on whether the withdrawal was valid. Respondent could not deprive the superior court of jurisdiction to complete the foreclosure hearing or even to rule on his dismissal notice by withdrawing his appeal partway through.

Subject matter jurisdiction is fixed when a proceeding begins; a party can neither create nor destroy it by an act taken in the middle of the case. As our Supreme Court has put it, jurisdiction "depends upon the state of affairs existing at the time it is invoked" and "cannot be conferred upon a court by consent, waiver[,] or estoppel." *In re Peoples*, 296 N.C. 109, 144, 250 S.E.2d 890, 910 (1978) (citations omitted). Once a court has jurisdiction, "the general rule is that it will not be ousted by subsequent events," even events that "would have prevented jurisdiction from attaching in the

first instance." *Id.* at 146, 250 S.E.2d at 911. "Jurisdiction is not a light bulb which can be turned on or off during the course of a trial." *Id.* (citation omitted). Were the rule otherwise, "it would be within the power of the defendant to preserve or destroy jurisdiction of the court at his own whim." *Id.* (citation omitted). That is what Respondent sought to do here.

In short, *Cornblum* does not help Respondent. It reversed a foreclosure order because the order was void; these orders are not. With no defect to remedy, there is nothing to vacate, and the completed sale leaves nothing else for this appeal to decide.

## B. Lack of Mootness Based on Potential Future "Collateral Relief"

Respondent's second argument is that this appeal still matters to him. He asks "why Petitioner would fight this appeal so vigorously if in fact the appeal will not change anything at all," pointing to Petitioner's challenge to the record, its participation in a settlement conference, and its "comprehensive brief." The answer he offers is collateral relief: "[R]eversing the foreclosure order will permit [him] to pursue collateral relief, even if the property itself remains with a third-party purchaser." So Respondent suggests that if we deem this appeal moot and do not rule on his claimed jurisdictional defect, he may still "pursue collateral relief" against Petitioner despite the completed foreclosure.

But Respondent's hope of pursuing some unspecified future action against Petitioner is not the kind of "collateral consequence" that saves a completed foreclosure from mootness.

> Usually, when the terms of a challenged trial court judgment have been carried out, a pending appeal of that judgment is moot because an appellate court decision cannot have any practical effect on the existing controversy. In certain cases, however, the continued existence of the judgment itself may result in collateral legal consequences for the appellant. Possible adverse consequences flowing from a judgment preserve an appellant's substantial stake in the outcome of the case and the validity of the challenged judgment continues to be a "live" controversy. As a result, an appeal from a judgment which creates possible collateral legal consequences for the appellant is not moot.

*In re A.K.*, 360 N.C. 449, 452–53, 628 S.E.2d 753, 755 (2006) (internal quotation marks and citations omitted). Respondent has not shown any "[p]ossible adverse consequences" flowing from the orders that would keep this a "live controversy," now that the foreclosure sale cannot be undone. *Id.* The prospect of some future action against Petitioner is not a "collateral legal consequence[ ]" of these orders. *Id.* Respondent's appeal is thus moot.

## III. Conclusion

For the reasons explained above, we dismiss Respondent's appeal.

DISMISSED.

Judges FLOOD and FREEMAN concur.

Report per Rule 30(e).